IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| JOSEPH PACZKOWSKI, | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Civil Action No. 17-1665-RGA |
| | : | |
| TRUMAN MEARS, Warden,[1] and | : | |
| ATTORNEY GENERAL OF THE | : | |
| STATE OF DELAWARE, | : | |
| | : | |
| Respondents. | : | |

## MEMORANDUM OPINION

Joseph Paczkowski. *Pro se* Petitioner.

Carolyn Shelly Hake, Deputy Attorney General of the Delaware Department of Justice, Wilmington, Delaware.  Attorney for Respondents.

July 29, 2020
Wilmington, Delaware

---

[1] Warden Truman Mears replaced former Warden Robert May, an original party to this case.  *See* Fed. R. Civ. P. 25(d).

/s/ Richard G. Andrews
ANDREWS, UNITED STATES DISTRICT JUDGE:

Petitioner Joseph Paczkowski is an inmate in custody at the Sussex Correctional

Institution in Georgetown, Delaware.  Petitioner filed an Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 and an Amended Habeas Application (hereinafter

collectively referred to as "Petition").  (D.I. 1; D.I. 4)  The State filed an Answer asserting that

the Petition should be dismissed as time-barred or, alternatively, as procedurally barred from

federal habeas review.  (D.I. 36)  Petitioner filed a Reply in Opposition.  (D.I. 43)  For the

reasons discussed, the Court will deny the Petitioner as time-barred and, alternatively, as

procedurally barred from federal habeas review.

## I.     BACKGROUND

On August 19, 1999, Petitioner entered a *Robinson* plea in the Delaware Supreme Court

to one count of third degree unlawful sexual intercourse.  *See Paczkowski v. State*, 2001

WL213354, at *1 (Del. Jan. 2, 2001).  Pursuant to the plea agreement, Petitioner was sentenced

to twenty years at Level V, suspended after two years for fifteen years of probation.  *Id.*

On or about October 12, 2011, while Petitioner was on probation, Petitioner's probation officer

filed an administrative warrant alleging that Petitioner violated the conditions of his supervision

by having unsupervised contact with two minors, S.M., an 8-year old girl, and her brother. (D.I.

36 at 4).  At the time of the offenses, Petitioner was registered as a Tier 3 sex offender and

monitored by GPS.  (*Id.* at 2)  On December 19, 2011, Petitioner was indicted on five counts of

sex offender unlawful sexual conduct against a child in violation of 11 Del. Code § 777A for

allegedly committing sexual acts against S.M.  (*Id.* at 1; D.I. 41-2)  On April 4, 2012, Petitioner

pled guilty to one count of first degree unlawful sexual contact under 11 Del. Code § 769 (lesser

included offense) and one count of unlawful sexual solicitation under 11 Del. Code § 1112A

(lesser included offense), and stipulated that he was a habitual offender for sentencing on the first degree unlawful sexual contact offense.  (D.I. 36 at 2; D.I. 41-3 at 1-8)  Petitioner also pled guilty to violating his probation ("VOP").  (D.I. 36 at 2; D.I. 41-3 at 8-9)  That same day, the Superior Court sentenced Petitioner as follows: (1) as an habitual offender to eight years at Level V for the first degree unlawful sexual contact conviction; (2) to fifteen years at Level V for the sexual solicitation of a child conviction, suspended upon successful completion of the Family Problems Program for decreasing levels of supervision; and (3) to seven years at Level V for the VOP.  (D.I. 36 at 2; D.I. 41-3 at 8-10)  Petitioner did not appeal his convictions and sentences.

In January 2016, Petitioner filed *pro se* letters in the Superior Court claiming he was innocent and his trial counsel was ineffective.  He also requested new counsel, transcripts, and a hearing.  (D.I. 36 at 2-3;  D.I. 37-5; D.I. 37-6; D.I. 37-7;  D.I. 41-4)  The Superior Court treated the letters as a Rule 35 motion for modification/reduction of sentence, and denied the request after finding that the sentence imposed was reasonable and appropriate.  (D.I. 36 at 3; D.I. 37-8)  The Superior Court also informed Petitioner that his ineffective assistance of counsel allegations had to be raised pursuant to Delaware Superior Court Criminal Rule 61.  (D.I. 36 at 3; D.I. 37-8)  Petitioner did not appeal that decision.

On April 11, 2016, Petitioner filed a *pro se* Rule 61 motion (D.I. 37-9), which the Superior Court denied on December 7, 2016 (D.I. 37-12).  The Superior Court denied Petitioner's motion for reargument on February 20, 2017, and Petitioner did not appeal that decision.  (D.I. 36 at 3; D.I. 37-15)  Petitioner filed a second Rule 61 motion on August 29, 2017 (D.I. 37-16), which the Superior Court denied as time-barred and procedurally barred on September 6, 2017 (D.I. 37-17).  Petitioner did not appeal that decision.

2

Petitioner filed the instant Petition in November 2017, which appears to assert eighteen grounds for relief: (1) trial counsel coerced him to plead guilty; (2) his guilty plea was not knowingly and voluntarily made; (3) trial counsel provided ineffective assistance of counsel in numerous ways; (4) the indictment was unconstitutional because it identified him as a sex offender, and it did not state where and what time the offenses occurred; (5) the State withheld "[two] good [unidentified] witnesses for [his] defense"; (6) the version of Delaware's Sexual Offender Unlawful Sexual Conduct of a Child statute, 11 Del. C. § 777A, pursuant to which he was indicted was unconstitutional; (7) the state court failed to hold a hearing on his trial counsel's competency, and denied him his Sixth Amendment right to competent counsel; (8) his due process rights were violated because he was illegally detained from October 12, 2011 to December 23, 2011 without being charged or allowed bail during this period of time; (9) his due process rights were violated because the initial report that he may have sexually abused S.M. was made to his probation officer, rather than to the police; (10) the state court abused its discretion in refusing to hold an evidentiary hearing and by ordering Delaware's Department of Correction to destroy evidence; (11) the State violated his due process rights by allegedly having a witness "lie" during grand jury testimony; (12) trial counsel had a conflict because she allegedly represented the victim's father, who was a witness for the State, in a "related" case, "sold [him] out to the State," "abandoned [him]," and violated the "Code of Ethic and unprofessional conduct"; (13) the prosecutor failed to interview or subpoena the social worker on the case; (14) the prosecutor and probation officer withheld evidence by failing to provide GPS monitoring information and his VOP report; (15) the prosecutor and the state court violated "Court Rules of Superior Court Criminal," the "Code of Conduct," and "Rules of Evidence"; (16) the state court

violated his rights by not informing him about his right to a preliminary hearing; (17) the state

court violated his rights by not reconsidering his motion for reargument on his Rule 61 motion;

and (18) his due process rights were violated when his probation was revoked.  (D.I. 1; D.I. 4)

## II.    ONE YEAR STATUTE OF LIMITATIONS

AEDPA prescribes a one-year period of limitations for the filing of habeas petitions by

state prisoners, which begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).  Timeliness must be evaluated on a claim-by-claim basis,[2] and

AEDPA's limitations period is subject to statutory and equitable tolling.  *See Holland v. Florida*,

560 U.S. 631 (2010) (equitable tolling); 28 U.S.C. § 2244(d)(2) (statutory tolling).

Petitioner does not assert, and the Court cannot discern, any facts triggering the

application of § 2244(d)(1)(B) or (C).  However, the Court construes Petitioner's contention that

he filed his August 2017 Rule 61 motion within one year of learning about the 2015 amendment

---

[2]*See Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (holding that "28 U.S.C. 2244(d)(1), like other statute of limitations provisions, must be applied on a claim-by-claim basis.")

to 11 Del. Code § 777A as an attempt to trigger a later starting date for the limitations period under § 2244(d)(1)(D).  Since Claims One, Two, Four, and Six are the only Claims arguably premised on the September 2015 amendment to § 777A, only these particular Claims have the potential of benefitting from Petitioner's attempt to trigger a later starting date for the limitations period under § 2244(d)(1)(D).

Determining if a petitioner has exercised due diligence for § 2244(d)(1)(D) purposes is context-specific, and the essential question is "whether the petitioner should be expected to take actions which would lead him to the information." *Wilson v. Beard*, 426 F.3d 653, 661-62 (3d Cir. 2005). The later starting date under § 2244(d)(1)(D) commences "when the factual predicate of a claim could have been discovered through the exercise of due diligence, not when it was actually discovered." *Schlueter v. Varner*, 384 F.3d 69, 74 (3d Cir. 2004). While this standard does not require "the maximum feasible diligence," it does require reasonable diligence in the circumstances, and a petitioner can only avail himself of a later accrual date "if vital facts could not have been known." *Id*. When evaluating a petitioner's diligence, a court must consider that the "statute's clear policy calls for promptness." *Johnson v. United States*, 544 U.S. 295, 311 (2005) (discussing 28 U.S.C. § 2255(d)(4)).  Under these principles, if the amendment to § 777A constitutes a "factual predicate" for § 2244(d)(1)(D) purposes, September 3, 2015 constitutes the relevant starting date, because that is the date on which the amendment became effective. *See Sparks v. Perry*, 2015 WL 4638291, at *2 (E.D.N.C. Aug. 4, 2015).

Nevertheless, the Court concludes that the amendment to § 777A does not constitute a factual predicate for § 2244(d)(1)(D) purposes.  It is generally accepted that a state court decision clarifying or re-defining state law may trigger § 2244(d)(1)(D) only if that state court decision

5

was rendered in the petitioner's own litigation history that affected his legal status. *See Payne v. Metzger*, 2018 WL 1377096, at *2 (D. Del. Mar. 19, 2018); *Blizzard v. Deloy*, 855 F.Supp.2d 209, 212 (D. Del. 2012). A statutory amendment occurring after a petitioner's conviction is different from a state court decision clarifying or redefining substantive law issued in petitioner's own litigation history. Although the Court has not found any caselaw explicitly setting forth when, or even if, a statutory amendment occurring after a petitioner's conviction can provide the factual predicate of a claim under § 2244(d)(1)(D), the Supreme Court's reference to "**new evidence** [that] could have been discovered through the exercise of due diligence" when discussing § 2244(d)(1)(D)'s general applicability in *McQuiggan v. Perkin*s provides some instruction *McQuiggan v. Perkin*s, 569 U.S. 383, 398-99 (2013) (emphasis added). A statutory amendment is a legal predicate to a claim, not "new evidence" providing a factual predicate for § 2244(d)(1)(D) purposes.[3]

In this case, Petitioner was not convicted or sentenced under § 777A, because he pled guilty to the lesser-included-offenses of first degree unlawful sexual contact under 11 Del. Code § 769 and sexual solicitation of a child under 11 Del. Code § 1112A. (D.I. 37-4)  Since the amendment of § 777A did not alter any facts used in Petitioner's conviction or sentence, the 2015 amendment to § 777A does not reset the limitations period for Claims One, Two, Four and

---

[3]In addition, it appears evident that nothing in AEDPA "meant to take away state courts' ability to handle as they see fit the always-thorny problem of the retroactivity of changes in substantive law." *Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005). Presumably this applies just as well to the ability of legislatures to address that "always-thorny problem" too.

Six.[4]  Given this conclusion, the one-year period of limitations for all eighteen Claims in the

Petition began to run when Petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), if a state prisoner does not appeal a state court judgment, the

judgment of conviction becomes final, and the one-year period begins to run, upon expiration of

the time period allowed for seeking direct review. *See Kapral v. United States*, 166 F.3d 565,

575, 578 (3d Cir. 1999); *Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).  Here, the Delaware

Superior Court sentenced Petitioner on April 4, 2012, and he did not appeal that judgment.

Therefore, Petitioner's conviction became final on May 4, 2012. *See* Del. Supr. Ct. R. 6(a)(ii)

(establishing a thirty day period for timely filing of notice of appeal).  Applying the one-year

limitations period to that date, Petitioner had until May 6, 2013 to timely file his Petition.[5]  *See*

*Wilson v. Beard*, 426 F.3d 653 (3d Cir. 2005) (holding that Federal Rule of Civil Procedure 6(a)

and (e) applies to federal habeas petitions); *Phlipot v. Johnson*, 2015 WL 1906127, at *3 n. 3 (D.

---

[4]Even if the Court were to view the September 3, 2015 amendment to § 777A as triggering § 2244(d)(1)(D), this later starting date would not render Claims One, Two, Four, and Six timely filed.  In this scenario, the limitations period began to run on September 4, 2015.  The limitations clock ran for 123 days until Petitioner filed the first Letter Rule 35 motion for modification of sentence on January 4, 2016, which was denied on January 21, 2016.  (D.I. 37-2 at 4; D.I. 37-8) Although Petitioner did not appeal that decision, the Rule 35 motion tolled the limitations period through February 22, 2016 (extended two days because February 20, 2016 was a Saturday). Petitioner filed a Rule 61 motion on April 11, 2016, which was denied on December 7, 2016, and actually tolled the limitations through March 22, 2017 (longer than the usual thirty day appeal period because Petitioner filed a motion for reargument).  At this point, another forty-nine days of the limitations period had expired.  The limitations clock started to run again on March 23, 2017, and ran another 160 days until Petitioner filed his second Rule 61 motion on August 29, 2017.  The second Rule 61 motion was denied on September 6, 2017, and tolled the limitations through the end of the appeal period to October 6, 2017.  The limitations clock started to run on October 7, 2017, and  ran the remaining thirty-two days without interruption until the limitations period expired on November 8, 2017.  Thus, even with the later starting date, Petitioner's filing on November 12, 2017 was four days too late.

[5]Since AEDPA's one-year period ended on a weekend day, the limitations period extended through the end of the day on Monday, May 6, 2013. *See* Fed. R. Civ. P. 6(a)(3).

Del. Apr. 27, 2015) (AEDPA's one-year limitations period is calculated according to the anniversary method, *i.e.*, the limitations period expires on the anniversary of the date it began to run).

Petitioner did not file the instant Petition until November 12, 2017,[6] approximately four years and six months after that deadline. Thus, the Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The Court will discuss each doctrine in turn.

**A. Statutory Tolling**

Pursuant to § 2244(d)(2), a properly filed state post-conviction motion tolls AEDPA's limitations period during the time the motion is pending in the state courts, including any post-conviction appeals, provided that the motion was filed and pending before the expiration of AEDPA's limitations period. *See Swartz v. Meyers*, 204 F.3d 417, 420-24 (3d Cir. 2000). The limitations period is also tolled for the time during which an appeal from a post-conviction decision could be filed even if the appeal is not eventually filed. *Id*. at 424. However, the limitations period is not tolled during the ninety days a petitioner has to file a petition for a writ of certiorari in the United States Supreme Court regarding a judgment denying a state post-conviction motion. *See Stokes v. Dist. Attorney of Philadelphia*, 247 F.3d 539, 542 (3d Cir. 2001).

---

[6]Petitioner mailed the instant Petition in an envelope postmarked November 14, 2017 (D.I. 1 at 46), yet the Petition contains a statement indicating that Petitioner provided the Petition to prison officials for mailing on November 12, 2017. (D.I. 1 at 1) Applying the prison mailbox rule, the Court adopts November 12, 2017 as the filing date. *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (the date on which a prisoner transmitted documents to prison authorities for mailing is to be considered the actual filing date).

Petitioner filed his Rule 35 motion for modification/reduction of sentence in January 2016 and his two Rule 61 motions in April 2016 and August 2017, long after AEDPA's limitations period had expired in May 2013. Therefore, none of his motions for post-conviction relief statutorily toll the limitations period for the eighteen Claims.[7] Accordingly, the instant Claims are time-barred, unless equitable tolling applies.

## B. Equitable Tolling

The one-year limitations period may be tolled for equitable reasons in rare circumstances when the petitioner demonstrates "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 560 U.S. at 649-50. With respect to the diligence inquiry, equitable tolling is not available where the late filing is due to the petitioner's excusable neglect. *Id.* at 651-52. As for the extraordinary circumstance requirement, "the relevant inquiry is not whether the circumstance alleged to be extraordinary is unique to the petitioner, but how severe an obstacle it creates with respect to meeting AEDPA's one-year deadline." *Pabon v. Mahanoy*, 654 F.3d 385, 401 (3d Cir. 2011). Notably, an extraordinary circumstance will only warrant equitable tolling if there is "a causal connection, or nexus, between the extraordinary circumstance [] and the petitioner's failure to file a timely federal petition." *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013).

Petitioner appears to believe that the limitations period should be equitably tolled for two reasons. First, he appears to argue that tolling is warranted because he filed his August 2017 Rule 61 motion (D.I. 37-16) within one year of becoming aware that a 2015 amendment to 11

---

[7]Although Petitioner filed a letter in the Superior Court on April 12, 2012 requesting the return of property seized in his case (D.I. 41-1 at 3, Entry No. 30), the letter does not trigger statutory tolling because it does not constitute a properly filed application for state post-conviction relief for the purposes of § 2244(d)(2). *See White v. Phelps*, 2008 WL 4327031, at *4 (D. Del. Sept. 22, 2008).

Del. Code § 777A(b) removed persons registered under § 4120(b)(1) from the definition of a "sex offender." (D.I. 43 at 2-3)  Some background information is necessary to understand this particular argument.  On December 19, 2011, Petitioner was indicted on five counts of sex offender unlawful sexual conduct against a child in violation of 11 Del. Code § 777A. (D.I. 37-3)  At the time of Petitioner's indictment, § 777A provided, "A sex offender who knowingly commits any sexual offense against a child is guilty of sex offender unlawful sexual conduct against a child." 11 Del. Code § 777A(a) (2011).  A "sex offender" was defined as "any person registered or required to be registered pursuant to §§ 4120(b)(1) and 4121(a)(4) of [Title 11], or the laws of any other state, the United States or any territory of the United States." 11 Del. Code § 777A(b).  Both first degree unlawful sexual contact (11 Del. Code § 769) and sexual solicitation of a child (11 Del. Code § 1112A) qualified as a "sexual offense" for purposes of § 777A. *See* 11 Del. Code §§ 777A(c) & 761(h) (2011).

    In September 2015, the Delaware General Assembly amended § 777A's definition of sex offender by deleting the reference to "persons registered under § 4120(b)(1)." In August 2017, Petitioner filed a Rule 61 motion challenging his indictment as unconstitutional under the 2015 amendment because his 2011 indictment identified him as a sex offender due to his registration requirement under § 4120(b)(1).  Petitioner appears to contend that the AEDPA limitations period should be equitably tolled until August 2017 because he filed the August 2017 Rule 61 motion challenging the indictment as unconstitutional "within [one] year after the bill [amendment] came to [his] attention by another inmate."[8] (D.I. 43 at 2, 54-57)  However, this argument is foreclosed by the fact that the retroactivity of a state's change in a statute is a matter

_____

[8]This argument is a slight variation of Petitioner's argument that he is entitled to a later starting date of the limitations period under § 2244(d)(1)(D). *See supra* at Section II A.

of state law. Without an express indication that the Delaware General Assembly intended the 2015 amendment to be applied retroactively, Petitioner is bound by the law that was in effect at the time he committed the crime.[9] *See, e.g., Fountain v. State,* 139 A.3d 837, 841 (Del. 2016) ("it is a general rule that statutory amendments operate prospectively unless the legislature expressly states, to the contrary, that the amendments shall be retrospective."); *Dahms v. State*, 858 A.2d 960 (Table), 2004 WL 1874650, at *1 (Del. Aug. 17, 2004) ("Under the general savings statute of the Delaware criminal code, an amendment to a criminal statute does not invalidate or terminate any prosecution, regardless of the stage of the case, unless the amendment expressly so provides."). Given these circumstances, the Court concludes that the date on which Petitioner learned about § 777A's amendment does not trigger a later starting date for the limitations period under the equitable tolling doctrine.

Petitioner's second argument for equitable tolling -- that he is actually innocent[10] -- is similarly unavailing. In *McQuiggin v. Perkins*, the Supreme Court held that a credible claim of actual innocence may serve as an "equitable exception" that can overcome the bar of AEDPA's one-year limitations period. *McQuiggin*, 569 U.S. at 386, 401. However, the *McQuiggin* Court cautioned that "tenable actual-innocence gateway pleas are rare," and a petitioner only meets the threshold requirement by "persuad[ing] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id.* at 386. An actual innocence claim must be based on "new reliable evidence – whether it be

---

[9]Moreover, Petitioner was not convicted under § 777A, because he pled guilty to the lesser-included-offenses of first degree unlawful sexual contact under 11 Del. Code § 769 and sexual solicitation of a child under 11 Del. Code § 1112A. (D.I. 37-4)

[10]Petitioner asserts "the evidence shows I am innocent" (D.I. 4-1 at 3), "I can prove I am innocent" (D.I. 4-1 at 4), and "I am innocent" (D.I. 30-3 at 1).

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence []
that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  Here, Petitioner's
bare-bones and unsupported statements that he is innocent do not warrant equitable tolling
because they do not assert or constitute new reliable factual evidence of his actual innocence as
required by *Schlup*.

Petitioner does not assert that any other alleged extraordinary circumstance prevented
him from timely filing the instant Petition.[11]  To the extent Petitioner's late filing was due to a
mistake or miscalculation of the one-year filing period, such a mistake does not warrant
equitably tolling the limitations period.  *See Taylor v. Carroll*, 2004 WL 1151552, at *5-6 (D.
Del. May 14, 2004).  Accordingly, the Court will dismiss the Petition as time-barred.

## III.   EXHAUSTION AND PROCEDURAL DEFAULT

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the
petitioner has exhausted all means of available relief under state law.  *See* 28 U.S.C. § 2254(b);
*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275
(1971).  The AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>      (ii) circumstances exist that render such process ineffective to protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

---

[11]Although Petitioner's Reply is more than 400 pages in length, the Reply basically re-asserts the
substantive arguments presented in the Petition, which do not address the issue of equitable
tolling.

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *see Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell v. Cone*, 543 U.S. 447, 451 n.3 (2005); *Castille v. Peoples,* 489 U.S. 346, 351 (1989). A federal legal claim is "fairly presented" to state courts when there is: "(1) reliance on pertinent federal cases employing constitutional analysis; (2) reliance on state cases employing constitutional analysis in like fact situations; (3) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution; [or] (4) allegation of a pattern of facts that is well within the mainstream of constitutional litigation." *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *See Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *See Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is

13

exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750*; Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *See McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51. To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *See Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell*, 547 U.S. 518, 537-38 (2006); *see Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

14

The record reveals that Petitioner did not exhaust state remedies for any of his eighteen Claims, because he did not appeal the Superior Court's denial of his two Rule 61 motions. (D.I. 30-6 at 7)  At this juncture, any attempt by Petitioner to raise the Claims in a new Rule 61 motion would be barred as untimely under Delaware Superior Court Criminal Rule 61(i)(1). *See DeAngelo v. Johnson*, 2014 WL 4079357, at \*12 (D. Del. Aug. 15, 2014).  Although Rule 61(i)(1) provides for an exception to the one-year time limitation if the untimely Rule 61 motion "asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final," no such right is implicated in the instant Claims.  Similarly, the exceptions to Rule 61(i)(1)'s time-bar contained in Rule 61(i)(5) and (d)(2) do not apply to Petitioner's case, because he has not shown that the state courts lacked jurisdiction, that there is new evidence of his actual innocence, or that a new rule of constitutional law retroactively applies to his Claims.

Since Petitioner is precluded from exhausting state remedies for the eighteen Claims at this point, the Court must treat the Claims as technically exhausted but procedurally defaulted. Consequently, the Court Court cannot review the merits of the Claims absent a showing of cause for the default, and prejudice resulting therefrom, or upon a showing that a miscarriage of justice will occur if the Claims are not reviewed.

Petitioner has not demonstrated cause because he does not explain why he did not present any of the eighteen Claims on post-conviction appeal.  Petitioner also cannot benefit from  the limited exception to the procedural default doctrine established in *Martinez v. Ryan*, 566 U.S. 1 (2012).  In *Martinez*, the Supreme Court held that the failure to appoint counsel (or the ineffective assistance of counsel) during an initial-review state collateral proceeding may establish cause for a petitioner's procedural default of a claim of ineffective assistance of trial

15

counsel. *Id*. at 16-17. In order to obtain relief under *Martinez*, a petitioner must demonstrate that the state did not appoint counsel in the initial-review collateral proceeding, that the underlying ineffective assistance of trial counsel claim is substantial, and that petitioner was prejudiced. *Id*. at 9-10, 16-17. A "substantial" ineffective assistance of trial counsel claim is one that has "some merit" which, given the *Martinez* Court's citation to *Miller-El v. Cockrell*, 537 U.S. 322 (2003), appears to be governed by the standards applicable to certificates of appealability. *Id*. at 13-14. Significantly, however, the *Martinez* Court explicitly limited its rule, stating that the "holding in this case does not concern attorney errors in other kinds of proceedings, **including appeals from initial-review collateral proceedings**." *Id.* at 16. (emphasis added) The Supreme Court explained, "While counsel's errors in these [other kinds of] proceedings preclude any further review of the prisoner's claim, the claim will have been addressed by one court, whether it be the trial court, the appellate court on direct review, or the trial court in an initial-review collateral proceeding." *Id*. at 11.

Here, the *Martinez* rule cannot provide cause for Petitioner's default for the Claims that do not allege ineffective assistance of trial counsel. The *Martinez* rule is also inapplicable to the Claims that do allege the ineffective assistance of trial counsel, because Petitioner presented those Claims in his Rule 61 motion. The instant default occurred because the Claims were not then presented to the Delaware Supreme Court on appeal from that proceeding.

In the absence of cause, the Court will not address the issue of prejudice. The miscarriage of justice exception also does not excuse Petitioner's procedural default, because he has not provided any new reliable evidence of his actual innocence. Accordingly, the Court will alternatively deny all the Claims in the Petition as procedurally barred.

IV.     **PENDING MOTION**

Petitioner filed a Letter Motion to Expedite the Case.  (D.I. 60)  Given the Court's

conclusion that the Petition must be dismissed, the Court will dismiss the Letter Motion as moot.

V.      **CERTIFICATE OF APPEALABILITY**

A district court issuing a final order denying a § 2254 petition must also decide whether

to issue a certificate of appealability.  *See* 3d Cir. L.A.R. 22.2 (2011); 28 U.S.C. § 2253(c)(2).

When a district court denies a habeas petition on procedural grounds without reaching the

underlying constitutional claims, the court is not required to issue a certificate of appealability

unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the

petition states a valid claim of the denial of a constitutional right; and (2) whether the court was

correct in its procedural ruling.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court concludes that the instant Petition is both time-barred and procedurally barred.

In the Court's view, reasonable jurists would not find this conclusion to be debatable.  Therefore,

the Court will not issue a certificate of appealability.

VI.     **CONCLUSION**

For the reasons discussed, the Court will dismiss the Petition as time-barred and,

alternatively, as procedurally barred.  An appropriate Order will be entered.

17